## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

MELISSA WALLS,

        Plaintiff,

v.

        **MEMORANDUM OF LAW & ORDER**
        Civil File No. 20-2001 (MJD/BRT)

KELLY SERVICES, INC., and
McNEILUS TRUCK AND
MANUFACTURING, INC.,

        Defendants.

Melissa Walls, pro se.

Julia H. Pozo, Seyfarth Shaw LLP, Counsel for Defendant Kelly Services, Inc.

Allyson J. Petersen and Joel D. O'Malley, Nilan Johnson Lewis PA, Counsel for Defendant McNeilus Truck and Manufacturing, Inc.

## I.  INTRODUCTION

This matter is before the Court on Defendants' Motion to Compel Arbitration and Dismiss Plaintiff's Complaint.  [Docket No. 9]  For the reasons that follow, the motion is granted, and this matter is dismissed without prejudice.

## II.  BACKGROUND

### A.   Factual Background

#### 1.   The Parties

According to Plaintiff's Complaint:

Plaintiff Melissa Walls resides in Tennessee.  (Compl. ¶ 1.)  Defendant

Kelly Services, Inc. ("Kelly") is a foreign corporation with a registered office in

Minnesota.  (Id. ¶ 2.)  Defendant McNeilus Truck and Manufacturing, Inc.

("McNeilus") is a Minnesota corporation.  (Id. ¶ 3.)

In April 2017, Walls began working at McNeilus as a temporary worker

employed by Kelly.  (Compl. ¶ 6.)  On May 16, 2017, a coworker closed the hood

of the truck on Walls' back, and she suffered a disk herniation.  (Id. ¶ 9.)  In June

or July 2017, Walls was given work restrictions by her doctor, including not

being able to lift more than ten pounds, not being able to carry things, and not

being able to reach for items.  (Id. ¶¶ 12-13.)  While working at McNeilus, Walls

told her supervisor that employees were being exposed to unnecessary and

avoidable danger, such as climbing on top of trucks without harnesses or safety

buckets and working on wet trucks.  (Id. ¶ 18.) Walls also told her supervisor

that she was being asked to work in excess of her restrictions.  (Id. ¶ 21.)  On

August 8, 2017, Kelly informed Walls that McNeilus had told Kelly that Walls'

position was no longer needed, but Kelly stated that it would continue to cover

the expenses for her injury.  (Id. ¶¶ 14-15.)  Walls later learned that her position

was not eliminated but, instead, was immediately filled by another Kelly

employee.  (Id. ¶ 16.)

### 2.     Kelly's eRegistration System

Since November 2014, Kelly has required every applicant for temporary

employment to sign an arbitration agreement as a condition of employment with

Kelly.  (Stewart Decl. ¶ 4.)  Kelly uses an eRegistration electronic employment

application system, through which the applicant reviews, completes, and signs a

series of hiring documents.  (Id. ¶¶ 2-3.)  One of the required hiring documents is

entitled "Dispute Resolution and Mutual Agreement to Binding Arbitration"

("Arbitration Agreement").  (Id. ¶ 3.)

To start the application process, Kelly sends an e-mail to the e-mail

address provided by the applicant containing a link to the eRegistration system

and a unique user ID and password.  (Id. ¶¶ 5-6.)  The applicant may only access

the eRegistration system by entering his or her unique credentials.  (Id. ¶ 5.)

Once logged in, the applicant may not proceed past the initial screen without

entering and confirming his or her Social Security Number.  (Id. ¶ 6.)  The

applicant must then insert additional unique information, including past and

current home addresses, prior supervisors, and work experience, education

history, and references.  (Id.)  The applicant then reviews and completes

additional hiring documents.  (Id. ¶¶ 7-8.) The applicant reviews each document

individually and creates an electronic signature to be applied to the hiring

documents.  (Id. ¶ 8.)  The applicant may save or print any of the hiring

documents and review them for as long as he or she may wish before

acknowledging and signing them.  (Id. ¶¶ 9-10.)

### 3.   Walls' Execution of the Arbitration Agreement

On March 7, 2017, Kelly emailed Walls the eRegistration invitation,

including Walls' unique user ID and password, to the email address she

provided.  (Stewart Decl. ¶ 14.)  Later that afternoon, Walls logged into

eRegistration with her unique credentials.  (Id. ¶¶ 15-16.)  She applied for

employment with Kelly using the eRegistration system.  (Id. ¶¶ 16-17, 21.)  She

completed all required documents and electronically acknowledged and signed

each document, including the Arbitration Agreement.  (Id. ¶¶ 17-23; Stewart

Decl., Ex. B, Arbitration Agreement.)

The Arbitration Agreement provides that Walls and Kelly "agree to use

binding arbitration, instead of going to court, for any 'Covered Claims' that arise

between [Walls] and Kelly Services, its related and affiliated companies, and/or

any current or former employee of Kelly Services or any related or affiliated

company."  (Arbitration Agreement ¶ 1.)  It further provides:

> The "Covered Claims" under this Agreement shall include all common-law and statutory claims relating to my employment, including, but not limited to, any claim for breach of contract, unpaid wages, wrongful termination, and for violation of laws forbidding discrimination, harassment, and retaliation on the basis of race, color, religion, gender, age, national origin, disability, and any other protected status.  **I understand and agree that arbitration is the only forum for resolving Covered Claims, and that both Kelly Services and I hereby waive the right to a trial before a judge or jury in federal or state court in favor of arbitration for Covered Claims.**

(Id. ¶ 2 (emphasis in original).)  "The Covered Claims under this Agreement do

not include claims for employee benefits pursuant to Kelly Services' ERISA

plans, worker's compensation claims, unemployment compensation claims,

unfair competition claims, and solicitation claims."  (Id. ¶ 3.)  The Arbitration

Agreement incorporates the rules of the American Arbitration Association

("AAA").  (Id. ¶ 4.)  A Michigan choice-of-law provision applies.  (Id. ¶ 5.)

**B.     Procedural History**

On August 28, 2020, Walls served Kelly and McNeilus with a Minnesota

state court Complaint asserting Count 1: Retaliatory Discharge in violation of

Minnesota workers' compensation law; Count 2: Failure to Offer Continued

5

Employment in violation of Minnesota workers' compensation law; Count 3:

Minnesota OSHA Discrimination; and Count 4: Minnesota Whistleblower Act -

Retaliation.

Defendants assert that, on September 9, Kelly's counsel contacted

Plaintiff's then-counsel, provided a copy of the parties' Arbitration Agreement,

and requested that Plaintiff submit her claims to arbitration in accordance with

the Arbitration Agreement.  Kelly's counsel and McNeilus's counsel contacted

Plaintiff's counsel multiple times demanding arbitration, but Walls refused to

withdraw her Complaint and proceed to arbitration.  (Def. Brief at 1-2.)

On September 18, Defendants removed the case to this Court based on

diversity jurisdiction.  [Docket No. 1]

On October 2, 2020, Defendants filed the current Motion to Compel

Arbitration and Dismiss Plaintiff's Complaint.  [Docket No. 9]  On October 22,

Plaintiff's attorney filed a Motion to Withdraw as Counsel.  [Docket No. 18]  On

December 1, the Court granted the Motion to Withdraw as Counsel, finding that

good cause existed to permit the withdrawal of counsel without substitution and

that Plaintiff did not object to her counsel's withdrawal.  [Docket No. 23]  The

Court also issued a briefing order on the motion to compel arbitration to give

Plaintiff additional time based on her new pro se status.  [Docket No. 25]

Plaintiff's response to the motion to compel arbitration was due by December 23.

To date, Plaintiff has filed no response.

### III.   DISCUSSION

#### A.   Standard for Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") provides that "[a] written provision

in . . . a contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract or transaction . . .

shall be valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA

allows a party to secure a court order compelling arbitration when one party has

failed, neglected, or refused to comply with an arbitration agreement.  9  U.S.C. §

4.

"[A]ny doubts concerning the scope of arbitrable issues should be resolved

in favor of arbitration, whether the problem at hand is the construction of the

contract language itself or an allegation of waiver, delay, or a like defense to

arbitrability."  Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1,

24–25 (1983) (footnote omitted).  "[A]n order to arbitrate the particular grievance

should not be denied unless it may be said with positive assurance that the

7

arbitration clause is not susceptible of an interpretation that covers the asserted

dispute." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650

(1986) (citations omitted). "[A] district court [must] send a claim to arbitration

when presented with a broad arbitration clause . . . as long as the underlying

factual allegations simply touch matters covered by the arbitration provision."

3M Co. v. Amtex Sec., Inc ., 542 F.3d 1193, 1199 (8th Cir. 2008) (citations omitted).

> The [Federal Arbitration Act] limits a district court's initial role in
> any challenge to an arbitration agreement to . . . 1) whether the
> agreement for arbitration was validly made and 2) whether the
> arbitration agreement applies to the dispute at hand, i.e., whether
> the dispute falls within the scope of the arbitration agreement.

Unison Co. v. Juhl Energy Dev., Inc., 789 F.3d 816, 818 (8th Cir. 2015) (citation

omitted).

Motions to enforce arbitration agreements in which outside evidence is

submitted are decided using the summary judgment standard. City of

Benkelman, Neb. v. Baseline Eng'g Corp., 867 F.3d 875, 882 (8th Cir. 2017).

## B.   Application of the FAA

The FAA governs all arbitration agreements "evidencing a transaction

involving commerce." 9 U.S.C. § 2. Defendants note that Plaintiff resides in

Tennessee; Kelly is a foreign corporation with a registered address in Minnesota;

and Plaintiff alleges that Kelly is an employer that violated Plaintiff's rights

under Minnesota employment laws.  She also seeks lost wages and monetary

damages as a result of Defendants' alleged conduct.  (Compl. ¶ 46.)  The Court

concludes that the FAA applies.  See, e.g., Int'l Bhd. of Elec. Workers, Loc. Union

No. 545 v. Hope Elec. Corp., 293 F.3d 409, 417 (8th Cir. 2002) ("[T]he FAA applies

to employment contracts.").

>    C.    **Whether the Arbitration Agreement Is Valid**

The validity of an arbitration agreement is a matter of state contract law,

subject to "grounds as exist at law or in equity for the revocation of any

contract."  Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 695 (8th Cir. 1994)

(quoting 9 U.S.C. § 2).  Under Minnesota law, a valid contract must contain an

offer, acceptance, and consideration.  S O Designs USA, Inc. v. Rollerblade, Inc.,

620 N.W.2d 48, 53 (Minn. Ct. App. 2002).  (Defendants note that the Arbitration

Agreement contains a Michigan choice of law provision but assert that Michigan

law is substantially the same.)  Thus, "in the absence of fraud, mistake, duress,

coercion, or unconscionable terms, a literate party who signs a contract – even if

that signature is in ignorance of the document's contents – remains bound by the

contract's terms and conditions."  Stanley v. Wings Holdings, Inc., No. 3-96-1141

(PAM), 1997 WL 826175, at *3 (D. Minn. Sept. 23, 1997) (citations omitted).

9

Kelly made an offer when it sent the Arbitration Agreement to Plaintiff through the eRegistration process.  Plaintiff had as much time as she wanted to print and review the Arbitration Agreement.  On March 7, 2017, Plaintiff accepted Kelly's offer by electronically signing the Arbitration Agreement.  There was adequate consideration because, in exchange for Walls' agreement to arbitrate she received employment by Kelly and Kelly's agreement to be bound by the arbitrator's award.  See, e.g., McNamara v. Yellow Transp., Inc., 570 F.3d 950, 956 (8th Cir. 2009); Overholt Ins. Serv. Co., Inc. v. Bredeson, 437 N.W.2d 698, 702 (Minn. Ct. App. 1989).

Additionally, Plaintiff has not asserted any grounds for refusing to enforce the Agreement, such as unconscionability.  The Arbitration Agreement is clearly titled and states the terms in plain English and bold text.  Plaintiff had as much time as she wanted to review the Arbitration Agreement before signing it.  The method of arbitration provided under the Arbitration Agreement preserves Plaintiff's relevant rights.  (See, e.g., Arbitration Agreement ¶¶ 9, 11-12.)

**D.    Whether Plaintiffs' Claims Fall within the Scope of the Arbitration Agreement**

### 1.   Claims Against Kelly

The Arbitration Agreement provides that Plaintiff agrees to arbitrate "all

common-law and statutory claims relating to [her] employment, including, but

not limited to, any claim for . . . violation of laws forbidding discrimination,

harassment, and retaliation on the basis of race, color, religion, gender, age,

national origin, disability, and any other protected status."  (Arbitration

Agreement ¶ 2.)  Plaintiff's Complaint seeks relief for alleged discriminatory and

retaliatory practices during her employment.  The Arbitration Agreement does

carve out claims for worker's compensation benefits, but Plaintiff makes no

allegation that she is owed worker's compensation benefits, only that she was

fired in retaliation for seeking worker's compensation benefits and that

Defendants failed to continue to employ her after she sought worker's

compensation benefits.  Plaintiff's asserted claims are encompassed by the

Arbitration Agreement.

### 2.   Claims Against McNeilus

Defendant McNeilus is not a signatory to the Arbitration Agreement.  Nor

is McNeilus explicitly mentioned in the Arbitration Agreement.

A nonsignatory may enforce an arbitration agreement "when the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided." CD Partners v. Grizzle, 424 F.3d 795, 798 (8th Cir. 2005). A nonsignatory may also do so when "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory." Id. (citation omitted). See also Nesslage v. York Sec., Inc., 823 F.2d 231, 233 (8th Cir. 1987) (allowing nonsignatory third-party beneficiaries of agreement to enforce arbitration provision in that agreement against signatory).

McNeilus is not a signatory to the Arbitration Agreement. However, Walls asserts interdependent claims against Kelly and McNeilus: she asserts that McNeilus and Kelly were joint employers (Compl. ¶ 7) and, throughout the Complaint, her allegations are against "Defendants" and do not differentiate between Kelly and McNeilus in any of the Counts (see, e.g., Compl. ¶¶ 23-24, 26-29, 31-33, 38-40, 44-45). McNeilus is also a third-party beneficiary of the employment agreement between Kelly and Plaintiff. In similar circumstances,

the Third Circuit held that the employer that hired the plaintiff employee

through Kelly, which provided recruitment and placement services for the

employer, was entitled to enforce the Arbitration Agreement against the

employee for employment-related claims.  See Noye v. Johnson & Johnson

Servs., Inc., 765 F. App'x 742, 748 (3d Cir. 2019) (applying Michigan law based on

Michigan choice-of-law provision in Kelly arbitration agreement).  The Court

concludes that McNeilus may invoke the Arbitration Agreement in this case.

### E.      Request for Dismissal

Section 3 of the FAA provides that, when claims are "referable to

arbitration . . . the court in which such suit is pending . . . shall on application of

one of the parties stay the trial of the action until such arbitration has been had."

However, in some cases, "[f]ederal courts may treat motions to compel

arbitration as motions to dismiss under Rule 12(b) of the Federal Rules of Civil

Procedure."  Hormel Foods Corp. v. Cereol, S.A., No. CIV.01-2243 JRT/FLN, 2002

WL 31185859, at *4 n.5 (D. Minn. Sept. 30, 2002) (citation omitted).

The Court has determined that all of Plaintiff's allegations in her

Complaint are covered by the Arbitration Agreement, which requires those

claims to be submitted to final, binding arbitration.  "[D]istrict courts may, in

their discretion, dismiss an action rather than stay it where it is clear the entire

controversy between the parties will be resolved by arbitration." <u>Green v.</u>

<u>SuperShuttle Int'l, Inc.</u>, 653 F.3d 766, 769–70 (8th Cir. 2011).  Here, there are no

claims left to be heard by this Court.  Thus, the Court dismisses the matter

without prejudice.  <u>See, e.g.</u>, <u>Leonard v. Delaware N. Cos. Sport Serv., Inc.</u>, 861

F.3d 727, 729 (8th Cir. 2017) (affirming district court's order compelling

arbitration and dismissing case without prejudice).

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

> Defendants' Motion to Compel Arbitration and Dismiss Plaintiff's
> Complaint  [Docket No. 9] is **GRANTED** and this matter is
> **DISMISSED WITHOUT PREJUDICE**.
>
> **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 24, 2021              s/Michael J. Davis
                                    Michael J. Davis
                                    United States District Court